IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| **SAMSUNG FIRE AND MARINE INSURANCE, CO. LTD., (U.S. BRANCH),** | : | **CIVIL ACTION** | |
| *Plaintiff,* | : | | |
| | : | | |
| v. | : | No. | 18-04365 |
| | : | | |
| **UFVS MANAGEMENT COMPANY, LLC; ROOSEVELT MOTOR INN, INC., ROOSEVELT INN, LLC, AND YAGNA PATEL,** | : | | |
| *Defendants / Third-Party Plaintiffs,* | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| **ACE PROPERTY AND CASUALTY INSURANCE COMPANY AND NATIONWIDE MUTUAL INSURANCE COMPANY,** | : | | |
| *Third-Party Defendants,* | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| **HARLEYSVILL PREFERRED INSURANCE AND NATIONWIDE MUTUAL INSURANCE COMPANY,** | : | | |
| *Fourth-Party Plaintiffs,* | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,** | : | | |
| *Fourth-Party Defendant / Fifth-Party Plaintiff,* | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| **CAPITOL SPECIALTY INSURANCE CORPORATION,** | : | | |
| *Fifth-Party Defendant.* | : | | |

1

**MEMORANDUM**

**KENNEY, J.**                                                                                           **MARCH 20, 2023**

## I.     INTRODUCTION

Plaintiff Samsung Fire and Marine Insurance, Co. LTD., U.S. Branch ("Samsung) brings a declaratory judgment action against UFVS Management Company, LLC ("UFVS"), Roosevelt Motor Inn, Inc. ("Roosevelt Inc."), Roosevelt Inn, LLC ("Roosevelt LLC"), and Yagna Patel ("Patel") (collectively, "Policyholders") seeking a declaration that Samsung does not have a duty to defend or indemnify Policyholders in four state court actions brought against them. Third-Party Defendants Nationwide Mutual Insurance Company and Harleysville Preferred Insurance Company (collectively, "Nationwide") bring a similar declaratory judgment action against Policyholders. Additionally, Third-Party Defendant ACE Property and Casualty Insurance Company ("ACE") seeks dismissal of a Fourth Amended Third-Party Complaint filed by Policyholders and seeks similar declaratory judgment. In turn, Policyholders seek declaratory judgment against Samsung and, separately, against Nationwide. These motions are fully briefed and, for the reasons set forth below, the Court will enter declaratory judgment in favor of Samsung, Nationwide, and ACE (collectively, "Providers").[1]

## II.    BACKGROUND

Four women allege, in separate state court actions, that they were victims of human sex trafficking at the Roosevelt Inn in Philadelphia (the "Hotel"), which was owned and operated by

---

[1] Additional parties in this case—Philadelphia Indemnity Insurance Company (Fourth-Party Defendant and Fifth-Party Plaintiff) and Capitol Specialty Insurance Corporation (Fifth-Party Defendant)—have not filed dispositive motions.

Policyholders at all relevant times. In relevant part, the women contend that there were clear signs of their trafficking at the Hotel and that Policyholders negligently failed to prevent or stop the sex trafficking scheme.[2] Policyholders were insured by Providers at the relevant times and seek coverage against the state court claims accordingly.

### a. M.B. Action

On March 10, 2017, a civil action was filed on behalf of M.B., a minor, against Policyholders in the Court of Common Please of Philadelphia County. *M.B. v. Roosevelt Inn, LLC, et al.*, Philadelphia Ct. Com. Pl., No. 170300712 ("*M.B. Action*"). M.B.'s Fourth Amended Complaint, filed November 8, 2019, correctly asserts that human sex trafficking "is a form of modern day slavery" and is a "form of evil in the abuse and exploitation of the most innocent and vulnerable." *M.B. Action*, Fourth Am. Compl. ¶ 1.

According to the Fourth Amended Complaint, M.B. was trafficked for sex at the Hotel as early as 2014 (when M.B. was fourteen years old). *Id.* ¶ 4. In support of her negligence claim, M.B. alleges that her traffickers frequently lingered in the Hotel's hallways and on the premises while she was engaged in commercial sex acts, paid for motel rooms in cash (because men paid for sex in cash), displayed "Do Not Disturb" signs, often refused housekeeping services, and visibly treated M.B. in an aggressive manner when in public areas of the Hotel. *Id.* at ¶¶ 39–49. M.B. alleges that she was forced to engage in multiple sex acts per day and that the many men who purchased sex entered and exited her room frequently throughout her stay at the Hotel and were often loitering in the hallway. *Id.* at ¶¶ 50–51. Indeed, she was trafficked so frequently that the rooms she occupied were often littered with used condoms. *Id.* at ¶¶ 43–44. Despite her young

---

[2] Patel is named as a defendant only in the M.B. Action.

age, M.B. wore sexually explicit clothing when in public spaces of the Hotel and was often accompanied by older men. *Id.* at ¶¶ 45, 53. Though she stayed at the Hotel for extended periods of time, she had very few personal items at the Hotel. *Id.* at ¶ 52. Additionally, throughout her extended stays, M.B. exhibited visible fear and anxiety while in public spaces of the Hotel. *Id.* at ¶ 47.

In sum, M.B. alleges that there were "open and obvious" signs of sex trafficking at the hotel and that Policyholders knew or should have known that sex crimes were occurring at the Hotel. *Id.* at ¶ 57. M.B. alleges that, as a result of Policyholders' shortcomings, she suffered physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, caught a sexually transmitted disease, and lost the enjoyments of life of life's pleasures. *Id.* at ¶¶ 63–65. M.B. asserts that Policyholders' actions were outrageous and in reckless disregard for M.B.'s health and welfare, thereby warranting punitive damages. *Id.* at ¶¶ 66–67. Through her Fourth Amended Complaint, M.B. asserts one count of negligence and one count of negligent infliction of emotional distress against Policyholders. *Id.* at ¶¶ 68–77, 88–90.

b. **C.A. Action**

On March 27, 2019, a second action was filed against Policyholders by C.A. *C.A. v. Roosevelt Inn, LLC, et al.*, Philadelphia Ct. Com. Pl., No. 190303355 ("*C.A. Action*"). The Second Amended Complaint, filed January 7, 2021, is similar to that of M.B. and begins by reiterating the heinous nature of human sex trafficking. *C.A. Action*, Sec. Am. Compl. at ¶ 1. C.A. alleges that she was trafficked at the Hotel between 2012 and 2013.[3] *Id.* at ¶ 9. The trafficking scheme and operative facts alleged by C.A. are virtually identical to those alleged by M.B. *See generally, id.*

---

[3] C.A. was rescued from another hotel in 2013. *Id.* at ¶ 80.

at ¶¶ 55–120. Additionally, C.A. alleges that she had conversations with the Hotel's employees who knew or should have known the purpose of her stay at the Hotel. *Id.* at ¶ 69. C.A. alleges similar harms to those of M.B. and similarly alleges that Policyholders' actions were outrageous and in reckless disregard for her health and welfare. *Id.* at ¶¶ 117–118. C.A. asserts one count of negligence, one count of negligent infliction of emotional distress, and one count of negligent hiring, training, and/or supervision against Policyholders. *Id.* at ¶¶ 121–131, 164–166, 176–182.

  c. **B.H. Action**

  On November 5, 2019, a third action was filed by B.H. *B.H. v. Roosevelt Inn, LLC, et al.*, Philadelphia Ct. Com. Pl., No. 190303356 ("*B.H. Action*"). The Second Amended Complaint, filed January 12, 2021, is similar to the two prior actions and again begins by highlighting the devastating impact of human sex trafficking. *B.H. Action*, Sec. Am. Compl. at ¶¶ 1–7. B.H. alleges that she was trafficked from January 2013 through May 2013 before being rescued by police at the Hotel. *Id.* at ¶ 80. The factual allegations asserted by B.H. are similar to those of C.A., including allegations as to conversations with the Hotel's employees. *Id.* at ¶¶ 55–120. Similarly, C.A. asserts one count of negligence, one count of negligent infliction of emotional distress, and one count of negligent hiring, training, and/or supervision against Policyholders. *Id.* at ¶¶ 121–131, 164–166, 176–182.

  d. **K.R. Action**

  On November 5, 2019, a fourth action was filed against Policyholders by K.R. *K.R. v. Roosevelt Inn, LLC, et al.*, Philadelphia Ct. Com. Pl., No. 191100552 ("*K.R. Action*"). K.R. alleges that she was trafficked for sex at the Hotel from March 2013 through October 2013. *K.R. Action*, Compl. at ¶ 8. As in the prior actions, K.R.'s Complaint begins by admonishing human trafficking as a "form of evil in the abuse and exploitation of the most innocent and vulnerable." *Id.* at ¶ 1.

5

The allegations asserted by K.R. are largely similar to those of M.B., C.A., and B.H. Additionally, the K.R. Complaint includes quoted testimony of a trafficker in which the Hotel was likened to a "strip club with girls wearing little to no clothing and [where] prostitution was open and obvious." *Id.* at ¶ 63. Moreover, as articulated in the Complaint, at least two security guards observed young girls loitering in the halls "half-naked," men buying sex from the young girls, and pimps being aggressive or violent with the girls. *Id.* at ¶¶ 65–67.

K.R. similarly alleges that, by renting rooms to the traffickers and allowing the trafficking to continue, Policyholders caused K.R. to suffer physical harm, a sexually transmitted disease, mental anguish, humiliation, exploitation, degradation, mental distress, and loss of the enjoyments of life. *Id.* at ¶ 95. Like the other actions, K.R. also alleges that Policyholders acted outrageously and in reckless disregard of her health and welfare, thereby warranting punitive damages. *Id.* K.R. asserts one count of negligence, one count of negligent infliction of emotional distress, and one count of negligent hiring, training and/or supervision against the Policyholders. *Id.* at ¶¶ 98–107, 128–130, 137–143.

### e. Insurance Policies[4]

The relevant insurance policies were provided by Nationwide, Samsung, and ACE. Nationwide insured Policyholders under consecutive policies from April 1, 2012 through April 20, 2013. ECF No. 70 at 6–7. Subsequently, Samsung issued two consecutive commercial package policies of insurance to UFVS d/b/a Roosevelt LLC[5] which collectively covered April 20, 2013 through April 20, 2015. ECF No. 71-4 at 10. The relevant provisions of both the Nationwide and

---

[4] Because the Court's analysis does not turn upon the language of each relevant policy, the Court provides only a cursory review of the policies.
[5] Roosevelt Inc. is not named in either policy.

Samsung policies are those providing coverage for bodily injury and property damage (Coverage A) and personal and advertising injury (Coverage B). *Id.*; ECF No. 70 at 7. Additionally, ACE insured UFVS d/b/a Roosevelt LLC under three consecutive Umbrella Plus Commercial Liability Policies from April 2011 through April 2014. ECF No. 74 at 12. The ACE policies apply in excess of the underlying primary policies issued by Samsung and Nationwide. *Id.* at 12–13. In relevant part, the ACE policies all include an exclusion for abuse or molestation, which is not included in the underlying policies. *Id.* at 13.

### III.  PROCEDURAL HISTORY

Samsung initiated this declaratory judgment action on October 10, 2018 and it was assigned to the Honorable Judge Jones. ECF No. 1. Pleadings were amended several times, and many motions mooted accordingly, to address amendments made to the complaints in the underlying cases over the course of several years. Additionally, the pleadings were expanded to encompass cross claims, counterclaims, and claims against and by additional insurance providers. Ultimately, on January 6, 2020, Samsung filed a Second Amended Complaint ("Samsung Complaint") seeking a declaration that it does not have a duty to defend or indemnify Policyholders in the underlying cases. ECF No. 50. Included in Policyholders' Answer to the Samsung Complaint was a counterclaim for declaratory judgment against Samsung, to which Samsung responded on January 23, 2020. ECF Nos. 52, 53.

On February 12, 2020, Policyholders filed a Fourth Amended Third-Party Complaint ("Third-Party Complaint") against ACE and Nationwide. ECF No. 63. Through the Third-Party Complaint, Policyholders seek declaratory judgment against both ACE and Nationwide and further assert a breach of contract claim against ACE. *Id.* Nationwide filed an Answer to the Fourth Amended Complaint and brought a counterclaim for declaratory judgment against Policyholders

7

on February 19, 2020, to which Policyholders responded on March 2, 2020. ECF Nos. 66, 69. On March 12, 2020, Nationwide filed a Motion for Judgment on the Pleadings against Policyholders. ECF No. 70. This motion was fully briefed throughout March and April 2020. ECF Nos. 77, 81, 83, 86.

On March 13, 2020, Samsung filed a Motion for Judgment on the Pleadings against Policyholders. ECF No. 71. This motion was fully briefed throughout March and April 2020. ECF Nos. 76, 80, 82. Also on March 13, 2020, Policyholders filed a Motion for Judgment on the Pleadings against Nationwide. ECF No. 72. This Motion was fully briefed throughout Spring 2020. ECF Nos. 75, 84, 89, 92. Additionally, on March 13, 2020, Policyholders filed a Motion for Judgment on the Pleadings against Samsung. ECF No. 73. This motion was fully briefed throughout Spring 2020. ECF Nos. 78, 85, 89, 90. Finally, also on March 13, 2020, ACE filed a Motion to Dismiss the Fourth Amended Complaint. ECF No. 74. This too was fully briefed throughout March and April 2020. ECF Nos. 79, 87.

On November 3, 2020, Nationwide filed a Fourth Amended Complaint against Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") seeking a monetary judgment for costs and fees incurred in defending Policyholders. ECF No. 94. On January 8, 2021, Philadelphia Indemnity filed an Answer and Counterclaim against Nationwide, to which Nationwide responded on January 14, 2021. ECF Nos. 100, 102. Also on January 8, 2021, Philadelphia Indemnity filed a Fifth-Party Complaint against Capitol Specialty Insurance Corporation ("Capitol Specialty") seeking declaratory judgment, among other relief. ECF No. 101. On February 26, 2021, Capitol Specialty filed an Answer to Philadelphia Indemnity's Fourth Amended Complaint and, additionally, brought a Counterclaim and Crossclaim for declaratory judgment against Policyholders, Samsung, ACE, Nationwide, and Philadelphia Indemnity. ECF

No. 106. Nationwide, ACE, Philadelphia Indemnity, and Policyholders filed their respective Answers throughout March 2021. ECF Nos. 107, 109, 110, 113. Samsung, in turn, filed a Motion to Dismiss the claims brought by Capitol Specialty. ECF No. 108. Samsung's Motion to Dismiss was fully briefed in March 2021. ECF No. 112.

On June 16, 2021, Roosevelt LLC and Roosevelt Inc. filed for bankruptcy, which automatically stayed this case pursuant to 11 U.S.C. § 362.[6] ECF No. 116. Subsequently, on March 2, 2022, Judge Jones ordered that this case be placed in civil suspense and terminated all deadlines. ECF No. 120. On November 21, 2022, this case was reassigned from the Honorable Judge Jones to this Court. ECF No. 125. That same day the Court lifted the stay in its entirety and removed the case from suspense, as requested by counsel and permitted by the United States Bankruptcy Court for the Eastern District of Pennsylvania. ECF No. 124-3 (Order permitting that the stay be lifted "solely to permit the continuance and adjudication of" this action); ECF No. 126. On November 23, 2022, Samsung filed a Notice of Supplemental Authority, to which ACE and Nationwide subsequently joined. ECF Nos. 127, 130, 131. Policyholders subsequently opposed the supplemental authority. ECF No. 133. Samsung, ACE, and Nationwide responded to Policyholders' opposition in January 2023. ECF Nos. 137, 138, 139. The Court held a status conference with all parties on December 16, 2022 to discuss the open motions. ECF No. 132. The motions pending before the Court have now been extensively briefed and are ripe for consideration.

---

[6] Though the Bankruptcy case had the effect of staying this case, Judge Jones had previously stayed the pending motions (ECF Nos. 70–74). ECF No. 111.

## IV.  STANDARD OF REVIEW[7]

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, provided the party does so early enough not to delay trial. Fed. R. Civ. P. 12(c). Such a motion are only granted "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 469 n.7 (3d Cir. 2019) (quoting *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008)).

Courts in this circuit construe motions for judgment on the pleadings under the same standard as motions to dismiss made pursuant to Rule 12(b)(6). *Katzenmoyer v. City of Reading*, 158 F. Supp. 2d 491, 496 (E.D. Pa. 2001). "The only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Sprague v. Neil*, No. 1:05-CV-1605, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007) (citing 2 Moore's Fed. Practice Civil § 12.38 (2004)). As is also true generally, "courts must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009).[8]

To survive a motion to dismiss under Rule 12(b)(6) or 12(c), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when its factual allegations allow a court to

---

[7] The instant motions are either Motions for Judgment on the Pleadings (ECF Nos. 70–73) or Motions to Dismiss pursuant Rule 12(b)(6) (ECF Nos. 74, 108). Accordingly, the standard of review is substantively identical.

[8] The underlying complaints are matters of the public record which the Court deems appropriate for judicial notice.

draw a reasonable inference that a defendant is liable for the harm alleged. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). A court must accept as true all factual allegations contained in a complaint and interpret them in the light most favorable to the non-moving party. *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011).

## V.   DISCUSSION

Providers argue that there is no duty to defend or indemnify because of both the language of each respective policy (or relevant exclusions) and because Pennsylvania public policy bars coverage. Assuming, *arguendo*, that the policies trigger a duty to defend or indemnify, the Court would still have to decide the public policy question. Accordingly, because the Court finds that public policy bars coverage as to all Providers and for the sake of judicial economy, the Court solely addresses this issue.

### a.  Legal Standard

The interpretation of any contract, including insurance policies, is a question of law for the Court to decide. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). Where the language of a policy is clear and unambiguous, such language must be given effect. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). An insurer's defense obligation is determined by the factual allegations of the underlying complaint which are taken as true and, generally, construed in favor of coverage. *See Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 321–22 (Pa. 1963). Specifically, to prevent "artful pleading designed to avoid policy exclusions," the facts alleged in the underlying complaint are controlling–not the legal theories or requested relief. *See Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 640 (E.D. Pa. 2018) ("[T]he focus of the coverage inquiry is on the substance, not the form, of the allegations."); *see also Kvaerner Metals Div. of Kvaerner*

*U.S.*, 908 A.2d at 896 ("[A]n insurer's duty to defend is triggered, if at all, by the factual averments contained in [the underlying] complaint."). Because the duty to defend is broader than the duty to indemnify, a finding that the former is not triggered will also preclude the latter. *Kvaerner Metals Div. of Kvaerner*, 908 A.2d at 330 n.7.

### b. The *Nautilus* Decisions

Providers assert that, even if the four corners of their respective policies provide coverage to Policyholders, public policy requires declaratory judgment in their favor. This is an issue that has been contemplated to some degree by several courts in this District and the Third Circuit. Because the parties disagree as to both their precedential value and their applicability to this case, the Court will describe each case in turn.

<u>*Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018)</u>

(hereinafter "*Nautilus I*")

In *Nautilus I*, Nautilus Insurance Company ("Nautilus") sought a declaration that it did not have a duty to defend and indemnify its insured, Motel Management Services ("MMS"), in a state court action alleging that MMS negligently failed to prevent human sex trafficking occurring on its property. 320 F. Supp. 3d 636, 638 (E.D. Pa. 2018). In the underlying action, plaintiff E.B. alleged that she was "recruited, enticed, solicited, harbored and/or transported to engage in commercial sex acts" at a motel owned and operated by MMS. *Id.* She alleged that rooms at the motel were paid for in cash, that she was "visibly" treated aggressively by her traffickers, that MMS knowingly permitted the traffickers' activity on its property, that MMS financially profited from the sex trafficking, and that MMS failed to intervene and report the trafficking. *Id.* at 638–39. Nautilus argued that it had no duty to defend or indemnify because: (1) coverage was excluded

by an "all assault and battery" exclusion in the relevant policy; and (2) public policy bars coverage of an insured for allegations of human trafficking. *Id.* at 638.

The *Nautilus I* court first analyzed whether Nautilus had a duty to defend or indemnify because the relevant policy contained an exclusion for all assault or battery. *Id.* at 640–43. After finding that this exclusion barred coverage, the court also discussed public policy considerations. Though all but one of the claims asserted against MMS sounded in negligence (including negligent violation of Pennsylvania Human Trafficking Law) and MMS had not been criminally charged, the court provided that "public policy precludes coverage" because it is against public policy to insure against criminal acts and "financially benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law." *Id.* at 643; *see also* ECF No. 136-1 (E.B. Complaint).

On appeal, the Third Circuit affirmed the district court's interpretation of the assault and battery exclusion and left open whether public policy would also preclude insurance coverage. *Nautilus Ins. Co. v. Motel Management Servs., Inc.*, 781 Fed. App'x 57, 60 n.5 (3d Cir. 2019) ("Because the insurance policy excludes coverage, we need not address whether public policy would also preclude insurance coverage for the criminal conduct and intentional torts alleged in E.B.'s complaint").

<u>*Nautilus Ins. Co. v. Motel Mgmt. Servs.*, No. 20-cv-289, 2021 WL 3164292 (E.D. Pa. July 27, 2021) (hereinafter "*Nautilus II*")</u>

Following *Nautilus I*, E.B. revised her underlying complaint[9] to remove allegations related to being held at gunpoint and Nautilus again sought declaratory judgment that it did not need to defend or indemnify MMS in the underlying action. *Nautilus II* at *1, *3. In her amended

---

[9] Nautilus contended that the changes were made in an effort to circumvent Judge Savage's ruling in *Nautilus I*.

complaint, E.B. brought two claims under the Pennsylvania Human Trafficking Law and four negligence claims. ECF No. 136-3. Nautilus again argued that insurance coverage was precluded because of: (1) the "all assault or battery" exclusion; and (2) public policy. *Nautilus II* at *3. The *Nautilus II* court found that Nautilus was entitled to declaratory judgment due to *res judicata*. *Id.* at *1. Additionally, even if *res judicata* did not apply, the court found that declaratory judgment was warranted both because of the "all assault or battery" exclusion and because of public policy. Indeed, "[t]he amended complaint in the underlying action still seeks damages against the Insured Defendants for their facilitation of illegal conduct, . . . [t]herefore, the public policy reasoning continues to apply." *Id.* at *5 n.4.

<u>*Nautilus Ins. Co. v. Motel Mgmt. Servs.*, No. 20-cv-1607, 2021 WL 4123915 (E.D. Pa. Sept. 9, 2021) (hereinafter "*Nautilus III*")</u>

In nearly identical underlying complaints, G.D. and N.Z. alleged that they were victims of human sex trafficking that occurred at and was facilitated by MMS. *Nautilus III* at *1. Specifically, G.D. and N.Z. alleged that they were "visibly treated in an aggressive manner" and were "forced to take crack cocaine . . . and [were] 'shot up' with heroin." *Id.* at *3. The underlying complaints asserted one claim for the violation of Pennsylvania's Human Trafficking statute and three negligence claims. *Id.* at *1. As in prior cases, Nautilus argued that coverage was barred under the policy's "all assault or battery" exclusion and because of public policy. *Id.* at *1. The *Nautilus III* court reasoned that because the allegations were clearly assaults and/or batteries and were the "but for" cause of the alleged injuries, the "all assault or battery" exclusion applied, and coverage was barred. *Id.* at *3. Additionally, the court provided that "insurance coverage would be against public policy." *Id.* at n.31. In a consolidated appeal of both *Nautilus II* and *III*, the Third Circuit affirmed the denial of coverage. *Nautilus Ins. Co. v. Motel Mgmt. Servs.*, No. 21-2590, 2022 WL 15722613

14

(3d Cir. Oct. 28, 2022). The Third Circuit's decision was based solely, and entirely, on the "all assault or battery" exclusion. *Id.*

### c. Public Policy Bars Coverage

The Third Circuit has not decided the question posed today: whether public policy bars insurance coverage for those allegedly involved in enabling human trafficking. However, the *Nautilus* cases suggest consensus among other courts in this district,[10] which this Court now adopts. There is no duty to defend or indemnify against actions arising out of an insured's criminal conduct related to the sex trafficking of minors. The Court appreciates that it may make public policy the basis of a judicial decision only in "the clearest of cases." *See Minnesota Fire & Cas. Co. v. Greenfield*, 589 A.2d 854, 868 (Pa. 2004) (quoting *Hall v. Amica Mut. Ins. Co.*, 648 A.2d 755, 760 (Pa. 1994)). Yet, the Court strains to imagine a clearer case than the one presented here in which the facts alleged indicate that Policyholders engaged in criminal conduct in violation of Pennsylvania's Human Trafficking Law.

In *Greenfield*, the Pennsylvania Supreme Court held that an insured cannot invoke their insurance policy to defend against a civil action stemming from insured's criminal activity. *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 868 (Pa. 2004). The relevant issue presented in *Greenfield* was whether there was a duty to defend an insured whose criminal conduct (selling Schedule I drugs) resulted in an unintended death in a negligence action. *Id.* at 860. The

---

[10] Policyholders allege that the *Nautilus* cases are inapposite because the determinative "all assault and battery" clause is not present in the applicable policies here. ECF No. 133 at 3. Though the cases were affirmed based on such provisions, the public policy discussions in the *Nautilus* cases are alternative holdings rather than inconsequential *dicta*. *Philadelphia Marine Trade Ass'n-Int'l Longshoremen's Ass'n Pension Fund v. Comm'r*, 523 F.3d 140, 147 n.5 (3d Cir. 2008) (quoting *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) for the position that "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."). Moreover, even if such discussions represent *dictum*, the *Nautilus* cases provide an instructive tool for analyzing the case at hand.

court explained that the Commonwealth's enactment of a statute criminalizing the alleged conduct provided a "clear enunciation" of public policy such that insurers were not required to defend or indemnify against damages arising out of insured's criminal conduct. *Id.* at 868–69.[11] Indeed, unlike the negligent violation of a federal equal pay statute or unlawful tax collections, public policy "demand[ed]" that the sale of a Schedule I controlled substance be excluded from insurance coverage. *Id.* at 687 n. 14. Here, human sex trafficking, which has been "explicit[ly] criminaliz[ed]" and has a "high potential for abuse" (to say the very least), is more akin to illegal drug sales than the violation of equal pay or tax laws. *See id.* at 687. Indeed, other Courts in this district have relied upon public policy to bar coverage for similarly repugnant conduct that infringes upon public safety, morals, and welfare. *See Teti v. Huron Ins. Co.*, 914 F.Supp. 1132, 1141 (E.D. Pa. 1996) (concluding that public policy barred insuring against damages resulting from intercourse between a teacher and minor student).

Here, the Pennsylvania Human Trafficking Law[12] provides:

(a) **Offense Defined** - A person commits a [first degree] felony if the person:

---

[11] The Court notes that *Greenfield*'s public policy analysis was limited to the sale of Schedule I controlled substances. The *Greenfield* court noted that "in cases that do not involve a criminal act by an insured with respect to a Schedule I controlled substance, our decision in *Eisenman*, reiterating the test traditionally required for an insurer to disclaim liability[,] i.e. the insurer must prove that the insured intended by his act to produce the damage which did actually occur, retains its validity." *Greenfield*, 855 A.2d at 866. However, *Eisenman v. Hornberger*, 264 A.2d 673 (Pa. 1970), addressed the doctrine of inferred intent. This doctrine, which formed the basis of the lower *Greenfield* court's holding and which the *Greenfield* court declined to extend, is inapplicable to the underlying facts alleged or insurance policies at issue here. Thus, the Pennsylvania Supreme Court's reasoning as to when public policy must bar coverage remains instructive.

[12] Civil actions may also be brought against those who "participated in" the human trafficking of another, subject to certain exceptions. 18 Pa. C.S. § 3051. Federal law also criminalizes knowingly financially benefitting from sex trafficking of children. 18 U.S.C. § 1591.

> (1) "[R]ecruits, entices, solicits, advertises, harbors, transports, provides, obtains, or maintains an individual if the person knows or recklessly disregards that the individual will be subject to sexual servitude; [or]
>
> (2) [K]nowingly benefits financially or receive anything of value from any act that facilitates any activity described in paragraph (1)[.]"

18 Pa. C.S. § 3011. Where an element involves a result of a person's conduct, such as here, a person acts knowingly if they are "aware that it is practically certain that [their] conduct will cause such a result." *Id.* at § 302. A person acts recklessly by "consciously disregard[ing] a substantial and unjustifiable risk that the material element exists or will result from his conduct." *Id.* The risk must be "of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the [person's] situation." *Id.*

The "factual allegations contained in the [underlying] complaint" are determinative of whether a duty to defend or indemnify is triggered, rather than the cause of action pled. *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Based on the facts alleged, rather than the theory of liability pled, the Pennsylvania legislature "has criminalized the conduct that resulted in the damages" in the underlying case. *See Greenfield*, 855 A.2d at 868. Each complaint alleges that Policyholders ignored open and obvious signs of sex trafficking including, but not limited to: (1) rooms littered with used condoms; (2) men loitering outside of the hotel rooms; (3) rooms paid for in cash; (4) frequent refusal of housekeeping; (5) aggression directed at the young victims (approximately 14–16 years old) in public spaces; (6) young victims (approximately 14–16 years old) wearing sexually explicit clothing; (7) different men entering and exiting the hotel rooms; and (8) young victims (approximately 14–16 years old) exhibiting fear and anxiety in public spaces.

*See supra* II(a)-(d). Collectively, these facts allege what a trafficker later confirmed: that the Hotel "operated like a strip club where prostitution was open and obvious." *K.R. Action*, Compl. at ¶ 63. Indeed, police rescued at least one trafficking victim from the Hotel premises prior to or concurrent with the trafficking of other victims. *B.H. Action*, Compl. at ¶ 80.

These facts, if true, make plain that Policyholders knowingly benefitted from acts facilitating the trafficking scheme by renting rooms to traffickers despite the overwhelming evidence of the trafficking scheme. Moreover, even if Policyholders did not *knowingly* benefit, at the very least, Policyholders looked the other way and feigned ignorance when confronted with clear indicia of sex trafficking. Indeed, the underlying facts alleged leave no question that Policyholders harbored[13] the underlying plaintiffs in reckless disregard of the sex trafficking that would result. Plainly, Policyholders' continued business dealings with traffickers and harboring of underlying plaintiffs represent a gross deviation from the standard of conduct that a reasonable person would observe in a similar situation. Accordingly, the Court is convinced that the factual allegations contained in the M.B., B.H., C.A., and K.R. complaints implicate Policyholders' conduct[14] that is criminalized under the Pennsylvania Human Trafficking Law and repugnant to Pennsylvania public policy. As reasoned by Pennsylvania courts, it is against public policy to provide insurance for loss attributable to particularly harmful criminal conduct. *See Greenfield*,

---

[13] Harboring is defined as the act of affording lodging, shelter, or refuge to a person. *Black's Law Dictionary* (11th ed. 2019)

[14] Policyholders attempt to distinguish *Greenfield* and *Teti* on the basis that the Policyholders here are only alleged to have been negligent, while the traffickers are the ones who committed criminal conduct. This argument is a red herring. While the traffickers may be *more* culpable of criminal conduct, the facts alleged also expose Policyholders to independent criminal liability, regardless of the legal theories pled in the civil action or whether the Commonwealth has elected to prosecute Policyholders. Put simply, the Court does not base its decision on the traffickers' conduct or on the theory of liability alleged against Policyholders, but instead focuses on the factual allegations that implicate Policyholders themselves.

855 A.2d at 860. Here, shielding Policyholders from the consequences of their criminal conduct would be against the safety, morals, and welfare of the Commonwealth. Therefore, public policy bars coverage and Providers do not have a duty to defend or indemnify Policyholders in the underlying state court actions.

## VI.     CONCLUSION

For the reasons set forth above, the Court will: (1) grant the Motions for Judgment on the Pleadings asserted by Samsung and Nationwide (ECF Nos. 70–71); (2) grant ACE's Motion to Dismiss[15] (ECF No. 74); and (3) deny as moot the Motions for Judgment on the Pleadings asserted by Policyholders (ECF Nos. 72–73). An appropriate order will follow.

**BY THE COURT:**

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**

---

[15] Policyholders' breach of contract claim against ACE is essentially duplicative of their declaratory judgment claim and must be dismissed for the same reasons; because ACE does not have a duty to defend or indemnify, they are not in breach of contract with Policyholders.